IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

| | | |
|---|---|---|
| MAIN STREET AMERICA ASSURANCE COMPANY and NGM INSURANCE COMPANY, | ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | 1:19CV220 |
| CRUMLEY ROBERTS, LLP and CHRIS ROBERTS, | ) ) ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION AND ORDER**

LORETTA C. BIGGS, District Judge.

Crumley Roberts, LLP and Chris Roberts (together, "Roberts"), are named defendants in a putative class-action lawsuit recently decided by this Court, *Garey v. James S. Farrin, P.C.*, No. 1:16-cv-542 (the "underlying action"). (ECF No. 7 ¶ 12.) The plaintiffs in the underlying action allege that Roberts violated the Driver's Privacy Protection Act of 1994, 18 U.S.C. § 2721 *et seq.* ("DPPA"), by obtaining their names and addresses from automobile accident reports and using that information for marketing purposes.[1] (*Id.* ¶ 14.)

Roberts tendered defense of the underlying action to Main Street America Assurance Company ("Mainstreet") and NGM Insurance Company, Inc. (together, the "Insurers"),[2]

---

[1] The Second Amended Complaint, which is the operative complaint in the underlying litigation, was provided as an attachment to Defendants' Answer in this case. (*See* ECF No. 41-1.)

[2] The Insurers temporarily agreed to defend Roberts in the underlying action but did so under a full reservation of rights. (*See* ECF No. 7 ¶ 1.)

which had issued business liability and commercial liability coverage to Roberts between May 2015 and May 2017 (the "Policies").³ (*See* ECF No. 7 ¶¶ 1, 20, 23.) The Insurers now move for a judgment on the pleadings, seeking a declaration that the Policies do not provide coverage for the claims asserted in the underlying action and that, as a result, they have no duty to defend nor indemnify Roberts. (*See* ECF No. 49 at 6.) For the reasons that follow, their motion will be granted.

## I. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(c), "[a]fter the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Such a motion "is assessed under the same standards as a motion to dismiss under Rule 12(b)(6)," *Occupy Columbia v. Haley*, 738 F.3d 107, 115 (4th Cir. 2013)—that is, the reviewing court "takes the facts in the light most favorable to the non-moving party, but it need not accept as true unwarranted inferences, unreasonable conclusions, or arguments," *see Blue Rhino Glob. Sourcing, Inc. v. Well Traveled Imps., Inc.*, 888 F. Supp. 2d 718, 721 (M.D.N.C. 2012) (quoting *Giarratano v. Johnson*, 521 F.3d 298, 302 (4th Cir. 2008)).

Along with the complaint and the answer, when ruling on a 12(c) motion a court may also consider documents integral to and explicitly relied on in the pleadings, so long as there is no question about their authenticity. *See Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166 (4th Cir. 2016). As such, this Court will consider—in addition to the allegations in the pleadings themselves—the operative complaint in the underlying action as well as the applicable Policies in evaluating the Insurers' motion.

---

³ Copies of the Policies were appended to the Complaint. (*See* ECF Nos. 7-2; 7-3; 7-4; 7-5.)

## II.  DISCUSSION

In North Carolina,[4] the interpretation of language in an insurance policy is a question of law for the Court. *Nat'l Quarry Servs., Inc. v. First Mercury Ins. Co.*, 372 F. Supp. 3d 296, 302 (M.D.N.C. 2019) (quoting *N.C. Farm Bureau Mut. Ins. Co. v. Mizell*, 530 S.E.2d 93, 95 (N.C. Ct. App. 2000)).  "[T]he object of construing an insurance policy is to arrive at the insurance coverage intended by the parties when the policy was issued." *Harleysville Mut. Ins. Co. v. Buzz Off Insect Shield, L.L.C.*, 692 S.E.2d 605, 612 (N.C. 2010).  Clear and unambiguous language must be enforced as written. *Cont'l Cas. Co. v. Amerisure Ins. Co.*, 886 F.3d 366, 371 (4th Cir. 2018).  However, ambiguities are resolved (within reason) against the insurance company. *Id.* Relatedly, provisions extending coverage are viewed liberally, whereas those excluding coverage are construed narrowly. *Harleysville*, 692 S.E.2d at 612.  This is in keeping with the "well settled [rule] in North Carolina that insurance policies are construed strictly against insurance companies and in favor of the insured." *See State Cap. Ins. Co. v. Nationwide Mut. Ins. Co.*, 350 S.E.2d 66, 73 (N.C. 1986).

In deciding whether an insurer has a duty to defend, the reviewing court compares the underlying complaint and the relevant policies side-by-side to determine "whether the events as alleged are covered or excluded." *See Harleysville*, 692 S.E.2d at 610 (quoting *Waste Mgmt. of Carolinas, Inc. v. Peerless Ins. Co.*, 340 S.E.2d 374, 377 (N.C. 1986)).  In the course of this analysis, the insured must initially show that the alleged underlying facts arguably fall within the policy's

---

[4] As a federal court sitting in diversity, this Court is bound to apply the choice-of-law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co. Inc.*, 313 U.S. 487, 496–97 (1941).  North Carolina generally follows the rule of *lex loci contractus*, meaning "the substantive law of the state where the last act to make a binding contract occurred, usually delivery of the policy, controls the interpretation of the contract." *Fortune Ins. Co. v. Owens*, 526 S.E.2d 463, 466 (N.C. 2000).  The applicable Policies were issued in North Carolina. (*See, e.g.*, ECF Nos. 7-2 at 2; 7-4 at 2.)  Thus, the Court must interpret them according to North Carolina law.

3

coverage. *Kubit v. MAG Mut. Ins. Co.*, 708 S.E.2d 138, 147 (N.C. Ct. App. 2011). Once that burden is met, the onus "shifts to the insurer to prove that a policy exclusion excepts the particular injury from coverage." *Id.* If the insurer is successful, the burden shifts back to the insured to "prov[e] that an exception to the exclusion exists and applies to restore coverage." *See Home Indem. Co. v. Hoechst Celanese Corp.*, 494 S.E.2d 774, 783 (N.C. Ct. App. 1998). Ultimately, "if the insurance policy provides coverage for the facts as alleged," then the insurer has a duty to defend; however, if the allegations are "not within, or [are] excluded from, the coverage provided by the insurance policy," then no such duty arises. *See Harleysville*, 692 S.E.2d at 611.

Unlike the duty to defend, which hinges on the facts *as alleged* in the underlying complaint, the duty to indemnify is ordinarily "measured by the facts [as] ultimately determined at trial." *Id.* at 610. That said, once the court finds that there is no duty to defend, then it must also find that there is no duty to indemnify; if there is no coverage when the alleged facts are accepted as true, there certainly won't be coverage when those same facts become subject to dispute. *See Liberty Corp. Capital, Ltd. v. Delta Pi Chapter of Lambda Chi Alpha*, No. 1:09cv765, 2012 WL 3308371, at *3 (M.D.N.C. Aug. 13, 2012) (quoting *Penn–America Ins. Co. v. Coffey*, 368 F.3d 409, 413 (4th Cir. 2004)); *see also N.C. Farm Bureau Mut. Ins. Co., Inc. v. Phillips*, 805 S.E.2d 362, 366 (N.C. Ct. App. 2017) ("Because the duty to defend may be broader than the duty to indemnify . . . if it fails, so too does the duty to indemnify.").

On two separate occasions, the Western District of North Carolina has applied the standards outlined above to coverage disputes involving the same or similar underlying actions as well as insurance policies that were virtually identical to those at issue here. In both cases,

the court found that the insurer had neither a duty to defend nor a duty to indemnify. *See Hartford Cas. Ins. Co. v. Gelshenen*, 387 F. Supp. 3d 634, 642 (W.D.N.C. 2019); *Hartford Cas. Ins. Co. v. Greve*, No. 3:17CV183-GCM, 2017 WL 5557669, at *5 (W.D.N.C. Nov. 17, 2017). In both cases, the Fourth Circuit affirmed. *See Hartford Cas. Ins. Co. v. Davis & Gelshenen, LLP*, 801 F. App'x 915, 917 (4th Cir. 2020) (per curiam); *Hartford Cas. Ins. Co. v. Ted A. Greve & Assocs., PA*, 742 F. App'x 738, 741–42 (4th Cir. 2018) (per curiam). More recently, this Court has reached the same conclusion twice, including again in a case involving the underlying litigation at issue here. *See Sentinel Ins. Co. Ltd. v. James S. Farrin P.C.*, No. 1:17CV211, 2020 WL 3469836 (June 25, 2020); *Sentinel Ins. Co Ltd. v. Salama*, No. 1:17CV328, 2020 WL 3469834 (June 25, 2020). Roberts nevertheless argues that facts that led to these decisions are distinguishable from the instant case. Before considering that contention, however, the Court first examines the Policies in question.

The underlying action asserts that Roberts unlawfully obtained and used certain "protected personal information"—allegations which, Roberts contends, implicate coverage in the Policies for "personal and advertising injury," as that term is defined therein.[5] (*See* ECF No. 53 at 5, 11.) However, even assuming that the underlying action alleges a "personal and advertising injury," there are exclusions in each policy which unambiguously bar coverage. The first, found in Mainstreet's policies, excludes coverage for injury "arising directly or indirectly out of any action or omission that violates or is alleged to violate . . . any statute,

---

[5] As defined in the Policies, "'Personal and advertising injury' means 'injury, including consequential "bodily injury", arising out of one or more of [several] offenses," including "[o]ral or written publication, in any manner, of material that violates a person's right of privacy." (*See, e.g.*, ECF No. 53 ¶ 18.)

5

ordinance or regulation . . . that prohibits or limits the sending, transmitting, communicating or distribution of material or information."[6] (*See, e.g.*, ECF No. 49 at 3 (citing 7-3 at 73).) Given that the only claim in the underlying action against Roberts is for alleged violations of the DPPA, this exclusion clearly applies. The second relevant exclusion, found in NGM's commercial umbrella policy, similarly omits coverage for injuries arising "directly or indirectly" from alleged violations of "any federal, state or local statute, ordinance or regulation . . . that addresses, prohibits or limits the printing, dissemination, disposal, collecting, recording, sending, transmitting, communicating or distribution of material or information." (*See, e.g.*, ECF No. 49 at 3–4 (citing ECF No. 7-4 at 29).) This exclusion is nearly identical to the first except to the extent that it is more inclusive. It likewise applies.

Yet Roberts argues that the underlying complaint "includes facts that support a claim for intrusion upon a person's seclusion, solitude or private affairs." (ECF No. 53 at 11.) Moreover, Defendants contend that intrusion upon seclusion is a separate claim that arises out of North Carolina common law and not directly or indirectly out of the DPPA. (*Id.* at 11, 17.) Therefore, Roberts argues, there are some claims in the underlying litigation which these policy exclusions do not contemplate. (*Id.* at 15–17.)

This contention, however, is not persuasive. In North Carolina, "a plaintiff cannot successfully pursue an intrusion upon seclusion claim based upon the accessing of items which are either in the public record or required to be made available for public inspection." *Tillet v.*

---

[6] The DPPA is just such a statute. As the Supreme Court explained in *Maracich v. Spears*, the DPPA arose out of the "[c]oncern[ ] that personal information collected by States in the licensing of motor vehicle drivers was being released—even sold—with resulting loss of privacy for many persons." *See* 570 U.S. 48, 51–52 (2013). The resulting provisions, which enable suits against those who disclose personal information, "clearly, unambiguously, and expressly" create a right to privacy in personal information contained in motor vehicle records. *See Collier v. Dickinson*, 477 F.3d 1306, 1309 (11th Cir. 2007).

*Onslow Mem'l Hosp., Inc.*, 715 S.E.2d 538, 541 (N.C. Ct. App. 2011); *see also Alexander v. City of Greensboro*, 762 F. Supp. 2d 764, 817 (M.D.N.C. 2011) ("The court finds that even if [defendant's] actions were unauthorized and improper, this allegation does not plausibly rise to the level of an intrusion 'highly offensive to a reasonable person,' because . . . this information would have become a matter of public record as soon as a settlement agreement was reached."). As did the district court in *Hartford v. Greve*, this Court "takes judicial notice of the fact that North Carolina law provides that an accident report is a public record." *Greve*, 2017 WL 5557669, at *4 (citing N.C. Gen. Stat. § 20-166.1(i) and ultimately finding that the underlying actions did not constitute an intrusion upon seclusion under North Carolina Law). Though Defendants argue that this finding applied only to the First Amended Complaint and not the Second, they have pointed to no changes between the two complaints that would suggest a different analysis is either needed or appropriate. Therefore, because all of the allegations against Roberts in the underlying complaint stem "directly or indirectly" from alleged violations of the DPPA, the Court finds that the aforementioned exclusions operate as a bar to coverage. *See Gelshenen*, 387 F. Supp. 3d at 642 (reaching this conclusion); *Greve*, 2017 WL 5557669, at *5 (same).

In sum, having compared the pleadings in the underlying action with the Policies, this Court concludes that the Insurers bear no duty to defend or indemnify Roberts.

For these reasons, the Court enters the following:

## ORDER AND DECLARATION

IT IS THEREFORE ORDERED that the Insurers' Motion for Judgment on the Pleadings, (ECF No. 49), is GRANTED.

7

Further, it is DECLARED that the Insurers have no duty under the Policies to defend or indemnify Roberts in connection with the underlying action, *Garey, et al. v. James S. Farrin, P.C.,* No. 1:16-cv-542.

This, the 30th day of March 2021.

/s/ Loretta C. Biggs
United States District Judge